# EXHIBIT "A-1"

FILED ,
8/17/2017 11:27 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Brenda Carrillo

CITCML/SAC2 W/JD

## 2017CI15339

CAUSE NO. _____

| | | |
|---|---|---|
| TWANG PARTNERS LTD.,<br>ROGER T. TREVINO AND<br>JOSH POLANSKY | §<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| *Plaintiffs,* | §<br>§ | 288TH<br>\_\_ JUDICIAL DISTRICT |
| v. | §<br>§ | |
| TRAVELERS PROPERTY CASUALTY<br>COMPANY OF AMERICA AND<br>JOSH ENGLE | §<br>§<br>§<br>§ | |
| *Defendants.* | §<br>§ | BEXAR COUNTY, TEXAS |

### PLAINTIFFS' ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW PLAINTIFFS TWANG PARTNERS LTD., ROGER T. TREVINO and JOSH POLANSKY ("PLAINTIFFS"), and file their Original Petition, complaining of TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("TRAVELERS") and JOSH ENGLE ("ENGLE") (collectively referred to as "Defendants"), and alleges and states as follows:

### A. DISCOVERY CONTROL PLAN

1. Plaintiffs intend for discovery in this action be conducted under Level 2, in accordance with Tex. R. Civ. P. 190.3.

### B. PARTIES

2. Plaintiffs, TWANG PARTNERS LTD., ROGER T. TREVINO and JOSH POLANSKY ("PLAINTIFFS"), are a domestic limited partnership, and employees conducting business in Bexar County, Texas.

3. Defendant, TRAVELERS PROPERTY CASUALTY COMPANY OF

---

Plaintiffs' Original Petition

Page 1

AMERICA ("TRAVELERS"), is a foreign insurance carrier, organized and existing under the laws of Connecticut and authorized to conduct business in Texas, and may be served with process by serving its designated attorney for service Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

4.      Defendant, JOSH ENGLE ("ENGLE"), is an individual residing in and domiciled in Texas who is engaged in the business of adjusting insurance claims in the State of Texas. Service on this Defendant is not requested at this time.

## C. JURISDICTION

5.      This Court has subject-matter jurisdiction over the lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

6.      This Court has jurisdiction over Defendant TRAVELERS because this Defendant purposefully availed itself of the privilege of conducting business in the State of Texas and established minimum contacts sufficient to confer jurisdiction over this Defendant, and the assumption of jurisdiction over TRAVELERS will not offend traditional notions of fair play and substantial justice and is consistent with constitutional requirements of due process.

7.      Plaintiffs would show that Defendant TRAVELERS had continuous and systematic contacts with the State of Texas sufficient to establish general jurisdiction over said Defendant.

8.      Plaintiffs would also show that the cause of action arose from or relates to the contacts of Defendant TRAVELERS to the State of Texas, thereby conferring specific jurisdiction with respect to this Defendant.

9.      Furthermore, Plaintiffs would show that Defendant TRAVELERS engaged in activities constituting business in the State of Texas as provided by Section 17.042 of the Texas

Civil Practices and Remedies Code, in that said Defendant contracted with a Texas resident and performance of the agreement in whole or in part thereof was to occur in Texas, committed a tort in whole or in part in Texas, and recruits or has recruited Texas residents for employment inside or outside the state.

10.    This Court has jurisdiction over Defendant ENGLE because this Defendant engages in the business of adjusting insurance claims in the State of Texas, and Plaintiffs' causes of action arises out of this Defendant's business activities in the State of Texas.

### D. VENUE

11.    Venue is proper in Bexar County, Texas, because the insured property is situated in Bexar County, Texas. Tex. Civ. Prac. & Rem. Code §15.032.

### E. CONDITIONS PRECEDENT

12.    All conditions precedent to recovery have been performed, waived, or have occurred.

### F. AGENCY AND *RESPONDENT SUPERIOR*

13.    Whenever in this petition it is alleged that TRAVELERS did any act or omission, it is meant that TRAVELERS itself or its agents, officers, servants, employees, or representatives did such act or omission, and it was done with the full authorization or ratification of TRAVELERS or done in the normal routine, course and scope of the agency or employment of TRAVELERS or its agents, officers, servants, employees, or representatives.

### G. FACTS

14.    Plaintiffs are the owner of Texas Insurance Policy No. 6807167M165 (hereinafter referred to as "the Policy"), which was issued by Defendant TRAVELERS.

15.    Plaintiffs own the insured commercial property specifically located at 6255 WT

Montgomery Road, San Antonio, Texas 78252 (hereinafter referred to as "the Property").

     16.    Defendant TRAVELERS sold the Policy insuring the Property to Plaintiffs.

     17.    On or about May 17, 2016, a severe hailstorm and/or windstorm struck Bexar County, Texas, causing severe damage to homes and businesses throughout the area, including Plaintiffs' Property ("the Storm"). Specifically, Plaintiffs' roof sustained extensive damage during the Storm. Water intrusion through the roofs caused extensive damage throughout the interior of the Property including, but not limited to, the interior ceilings, walls, insulation, and flooring of the Property. Plaintiffs' Property also sustained substantial exterior damage during the Storm.

     18.    After the Storm, Plaintiffs filed a claim (Claim No. E4P3688001H) with their insurance company, Defendant TRAVELERS, for the damages to the Property caused by the Storm.

     19.    Plaintiffs submitted a claim to Defendant TRAVELERS against the Policy for Roof Damage, Structural Damage, Water Damage, and Windstorm and Hail Damage the Property sustained as a result of the Storm.

     20.    Plaintiffs requested that Defendant TRAVELERS cover the cost of repairs to the Property pursuant to the Policy, including but not limited to: repair and/or replacement of the roof and repair of the interior and exterior damages to the Property.

     21.    Defendant ENGLE was the adjuster assigned by TRAVELERS to adjust the claim. ENGLE was improperly trained and failed to perform a thorough investigation of Plaintiffs' Hail and Wind Damage Property claim and intentionally, knowingly and deceptively, with malice, set out to deny all or a portion of the Plaintiffs' Hail and Wind Damage Property claim by engaging in false, misleading, deceptive and fraudulent acts and practices of omission

and commission which ultimately resulted in Plaintiffs being denied the benefit of the bargain and loss payments due under the terms and conditions of the Policy of Insurance issued by TRAVELERS.

22.     ENGLE'S adjustment of the claim fraudulently, wrongfully, deceptively and negligently denied the claim and undervalued the cost of repair and/or replacement of covered items of damage to the insured Property in the claim report, which resulted in Plaintiffs receiving insufficient funds from TRAVELERS to cover the losses sustained by Plaintiffs to repair and/or replace the insured Property damaged by the Storm, excluding the amounts of the deductible and non-recoverable depreciation assessed pursuant to the terms and conditions of the Policy for which Plaintiffs were responsible.

23.     As a result thereof, on or about July 29, 2016, Plaintiffs received a letter from TRAVELERS in which it advised that based on ENGLE'S report, the damages were below the Policy deductible and the claim could not be covered. Plaintiffs' actual covered damage to the Property as a result of the Storm exceeded the sum of $209,851.02, which is continuing to increase each day that TRAVELERS fails and refuses to pay the Plaintiffs' claim due to increases in the costs of labor and materials.

24.     TRAVELERS and its adjuster, ENGLE, wrongfully denied Plaintiffs' full claim for repairs of the insured Property, even though the Policy provided coverage for losses such as those suffered by Plaintiff.

25.     Based upon information and belief, Defendant ENGLE was compensated on a per claim adjusted basis and/or other combination of compensation tied to the quantity of claims adjusted.  ENGLE was therefore motivated to conduct an inadequate and substandard claim investigation of Plaintiffs' Hail and Wind damage loss to Plaintiffs' Property resulting from the

Storm in order to increase the number of claims adjusted by him for his personal pecuniary benefit, as indicated below in sub-paragraphs (a) thru (g). Defendant ENGLE was negligent in violating TRAVELERS' written policies as they relate to claims handling practices by failing to fully investigate and document all damage to Plaintiffs' insured Property and by failing to fully investigate and evaluate the Plaintiffs' insured loss based upon local replacement and/or repair costs for each item of damage, as indicated below in sub-paragraphs (a) thru (g). Additionally, based upon information and belief and the acts and practices actually employed by Defendant ENGLE, ENGLE held a personal bias in favor of insurance companies and prejudice against insurance claimants generally, and more specifically towards Plaintiffs herein as specifically demonstrated below in sub-paragraphs (a) thru (b). Defendant ENGLE, intentionally, knowingly and fraudulently, with malice, engaged in the following specified acts and practices, among others stated herein, in violation of and in breach of the adjuster's moral, ethical and legal duties to Plaintiffs as a licensed claims adjuster, which was a producing and proximate cause of the damages and losses sustained herein by Plaintiffs resulting in the denial and/or underpayment of Plaintiffs' claim; to wit:

      a)    ENGLE'S investigation and inspection for damages to the Plaintiffs' Property was performed in less than forty (40) minutes, which is an insufficient time period to perform an adequate assessment of the damage to the Property resulting from the Storm;

      b)    ENGLE failed to and/or refused to properly interview the Plaintiffs to ascertain other damages that were not readily apparent or would not be readily apparent to an individual unfamiliar with the property in its Pre-Storm condition;

---

c) ENGLE refused to and did not inspect for hidden or latent damage resulting to Plaintiffs' Property that is customarily found to exist in Property that has gone through a hail and wind storm of the severity of that which occurred in the Bexar County area on May 17, 2016;

d) ENGLE failed and refused to include the usual and customary charges for costs of materials, supplies, labor and contractor's overhead and profit charged by contractors in the Bexar County area for the repair, replacement and restoration of the Plaintiffs' Property damaged by the Storm;

e) ENGLE performed only a cursory inspection of the roofs, exterior and interior of the insured Property; and failed to assess, estimate and include covered damage to the property in the report and adjustment of loss to TRAVELERS for exterior and interior water damages and/or note other damages existing to the Property at the time of inspection such as appliances, ceilings and walls that were sustained as a result of the Storm;

f) ENGLE, during his investigation of the Plaintiffs' claim, failed to include all damages sustained to the Property by the Storm, thus submitting an inaccurate and false report of Plaintiffs' covered Storm Property losses to TRAVELERS;

g) ENGLE fraudulently represented to Plaintiffs verbally and by conduct, in preparing an inadequate, incomplete and undervalued estimate of the cost of replacement and/or repair of Storm damage to Plaintiffs' property, that the majority of the damages to the Property were not severe or Storm related; and that most, if not all, of the covered damages found to exist upon observation of Plaintiffs' Property, were not covered by the Policy, but were due to normal wear and tear or the result of other causes, when in fact

such damage was Storm related and should have been included in ENGLE'S report to TRAVELERS.

26.      Defendant TRAVELERS failed to thoroughly review the fraudulent and inaccurate assessment of the claim by ENGLE, and ultimately approved ENGLE'S inaccurate report of the damages to the Property.

27.      The mishandling of Plaintiffs' claim has also caused a delay in the ability to fully repair the Property, which has resulted in additional damages.  To date, Plaintiffs have yet to receive the full payment to which they are entitled under the Policy and has not been able to fully repair or replace the damage to the insured Property.

28.      Defendant ENGLE is individually legally liable to Plaintiffs for the losses and damages sustained as a direct, producing and proximate cause of the acts of omission and commission detailed herein and above, for which Plaintiffs here now sue for the recovery of monetary damages within the jurisdictional limits of this court against said Defendant.

29.      In the alternative, without waiving the foregoing, and based upon information and belief, TRAVELERS, in hiring adjusters and claims representatives, was responsible to and had a legal duty to ensure that they hired and retained competent, qualified and ethical licensed adjusters and claims representatives who would deal fairly, honestly and in good faith with the policy holders of TRAVELERS in the practice of insurance claims handling.  TRAVELERS breached such duties in connection with Plaintiffs' Property Damage claim resulting from the Storm by failing to properly train, direct and oversee the claims handling practices employed by ENGLE.

30.      At all times material herein, TRAVELERS had a non-delegable contractual legal duty to timely, fairly and in good faith fully investigate, process, adjust, timely pay and re-adjust

claims for all covered losses sustained by its policy holders as a result of the Storm, including Plaintiff. TRAVELERS represented that it would do so in advertising mediums throughout the State of Texas and specifically in writing to its policy holders as an inducement for them to purchase and continue to renew homeowners and business property insurance with TRAVELERS. Due to a lack of knowledge and understanding of the insurance claims handling process, knowledge of construction costs and insurance policy coverage issues relating to storm related property losses, Plaintiffs relied on such representations to their detriment, purchased the Policy from TRAVELERS and accepted the estimate of damages from ENGLE which, unknown to Plaintiffs, included denial and underpayment of covered losses and damages sustained in the Storm. TRAVELERS made such representations knowing they were false and with the intent that Plaintiffs rely on such representations. TRAVELERS, having breached its legal duty to timely, fairly and in good faith investigate, process, adjust and pay for all covered losses sustained by Plaintiffs herein, is responsible for the acts of omission and commission set forth herein and above in connection with ENGLE'S investigation and claims handling practices employed to deny and/or underpay the covered losses and damages sustained by Plaintiffs as a result of the Storm.

31.    TRAVELERS distributed training, educational, and instructional materials to the field claim representatives and adjusters such as ENGLE; held meetings and issued directives to the field instructing how TRAVELERS wanted the hail losses like Plaintiffs' to be handled. TRAVELERS communicated and disseminated claims handling practices and methodologies to its field adjusters such as ENGLE of 1) "Quantity over Quality", 2) Minimization of damage estimates, 3) Under-valuation of reported replacement and/or repair estimates, and 4) Omission of probable covered damages in the report to the Property from the Storm. These policies served

to fuel and motivate ENGLE'S individual pre-disposition of bias in favor of insurance companies and prejudice towards claimants and the resulting losses sustained by Plaintiffs as set forth herein.

32.     Additionally, TRAVELERS and ENGLE, collectively and individually, conspired to and did breach their duty of good faith, fair dealing and timely payment of all covered losses owed to Plaintiffs resulting from the Storm as set forth below.

33.     Defendant ENGLE conducted a substandard and incomplete inspection of Plaintiffs' Property.  Plaintiffs' damages were noted in an inaccurate report and/or estimate of Plaintiffs' Storm damages, which failed to include many of the damages noted upon inspection and grossly underestimated and undervalued those damages that were included.

34.     Defendant TRAVELERS failed to thoroughly review the assessment of the claim by Defendant ENGLE and ultimately approved ENGLE'S inaccurate report of the damages.  As a result, Plaintiffs were considerably underpaid on their claim and have suffered damages.

35.     Together, Defendants set out to deny and/or underpay properly covered damages. As a result of Defendants' unreasonable investigation, including their under-scoping and incomplete inspection of Plaintiffs' Storm damages during their investigation(s) and failure to provide full coverage for the damages sustained by Plaintiffs, Plaintiffs' claim was improperly adjusted, and Plaintiffs were denied adequate and sufficient payment to repair the Property and has suffered damages.

36.     On or about July 1, 2016, ENGLE intentionally, knowingly and as directed by TRAVELERS, conducted a substandard investigation of Plaintiffs' claim with the intent to underpay or deny all or a portion of the claim for the benefit of TRAVELERS, which resulted in losses and damages to Plaintiffs' Property.  This practice of wrongfully denying and/or

underpaying claims of TRAVELERS policy holders for covered losses sustained by them in the Storm by refusing to fully inspect the Property for damage, misrepresenting coverage, the scope of coverage and loss, under-estimating repair costs, denying claims for covered losses underpaying covered losses of its insured policy holders, was specifically employed by ENGLE in connection with the handling of the claim for damages and losses sustained by Plaintiffs as a result of the Storm.

37.     Defendant ENGLE, engaged in a claims processing handling practice designed by TRAVELERS to reduce the overall loss payments TRAVELERS was obligated contractually to pay policyholders as a whole in the Bexar County area for the covered losses resulting from the Storm.  TRAVELERS directed its adjusters and claim representatives to misrepresent coverage, the scope of coverage and loss, under-estimate repair costs, deny claims for covered losses, underpay covered losses of its insured policy holders, refuse to inspect portions of the properties damaged, and claim that damage to the property found to exist was due to normal wear and tear or was the result of other causes that pre-existed the Storm as a basis for not including those damages in the report.  Plaintiffs' claim, as demonstrated herein, is typical of the deceptive acts and practices and unfair claims settlement practices intentionally and knowingly employed by Defendants TRAVELERS and ENGLE in connection with the handling of Plaintiffs' claim.

38.     As detailed in the paragraphs below, Defendant TRAVELERS wrongfully denied Plaintiffs' claim for repairs of the Property, even though the Policy provided coverage for losses such as those suffered by Plaintiffs.  Furthermore, Defendant TRAVELERS underpaid some of the Plaintiffs' claims by not providing full coverage for the damages sustained by Plaintiffs, as well as under-scoping the damages during its investigation.

39.     To date, Defendant TRAVELERS continues to delay in the payment for the

damages to the Property.  As such, Plaintiffs have not been paid in full for the damages to their Property.

40.     Defendant TRAVELERS failed to perform its contractual duties to adequately compensate Plaintiffs under the terms of the Policy.  Specifically, it refused to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged Property, and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiff.  Defendant TRAVELERS' conduct constitutes a breach of the insurance contract between TRAVELERS and Plaintiffs.

41.     Defendants misrepresented to Plaintiffs that the damage to the Property was not covered under the Policy, even though the damage was caused by a covered occurrence.  Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §§541.060(a)(1).

42.     Defendants failed to make an attempt to settle Plaintiffs' claim in a fair manner, although they were aware of their liability to Plaintiffs under the Policy.  Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(2)(A).

43.     Defendants failed to explain to Plaintiffs the reasons for their offer of an inadequate settlement.  Specifically, Defendants failed to offer Plaintiffs adequate compensation, without any explanation why full payment was not being made.  Furthermore, Defendants did not communicate that any future settlements of payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiffs' claim.  Defendants' conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(3).

44.     Defendants failed to affirm or deny coverage of Plaintiffs' claim within a reasonable time.  Specifically, Plaintiffs did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendants.  Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(4).

45.     Defendants refused to fully compensate Plaintiffs, under the terms of the Policy, even though Defendants failed to conduct a reasonable investigation.  Specifically, Defendants performed an incomplete and outcome-oriented investigation of Plaintiffs' claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs' losses on the Property.  Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(7).

46.     Defendant TRAVELERS failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiffs' claim, beginning an investigation of Plaintiffs' claim, and requesting all information reasonably necessary to investigate Plaintiffs' claim, within the statutorily mandated time of receiving notice of Plaintiffs' claim.  TRAVELERS' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE §542.055.

47.     Defendant TRAVELERS failed to accept or deny Plaintiffs' full and entire claim within the statutorily mandated time of receiving all necessary information.  TRAVELERS' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE §542.056.

48.     Defendant TRAVELERS failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay.  Specifically, it has delayed full payment of

Plaintiffs' claim longer than allowed and, to date, Plaintiffs have not received full payment for the claim. TRAVELERS' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.058.

49.     From and after the time Plaintiffs' claim was presented to Defendant TRAVELERS, the liability of TRAVELERS to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, TRAVELERS has refused to pay Plaintiffs in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment. TRAVELERS' conduct constitutes a breach of the common law duty of good faith and fair dealing.

50.     Defendants knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiff.

51.     As a result of Defendants' wrongful acts and omissions, Plaintiffs were forced to retain the professional services of the attorney and law firm who is representing it with respect to these causes of action.

## H. CAUSES OF ACTION:

### CAUSES OF ACTION AGAINST DEFENDANT JOSH ENGLE

### NONCOMPLIANCE WITH TEXAS INSURANCE CODE: UNFAIR SETTLEMENT PRACTICES

52.     Plaintiffs replead all of the material allegations above set forth in Paragraphs 1-51 and incorporate the same herein by this reference as if here set forth in full.

53.     Defendant TRAVELERS assigned Defendant ENGLE to adjust the claim. Defendant ENGLE was inadequately and improperly trained to handle claims of this nature and

performed an unreasonable investigation of Plaintiffs' damages.   During the investigation, ENGLE failed to properly assess Plaintiffs' Storm damages and omitted properly covered damages from his reports and/or estimates of the damages, including all of Plaintiffs' interior and exterior damages. In addition, the damages that ENGLE did include in his estimates and reports were grossly undervalued and underestimated.   As a result, Plaintiffs were considerably underpaid on their claim and have suffered damages.

54.   Defendant ENGLE'S conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a).  All violations under this article are made actionable by TEX. INS. CODE §541.151.

55.   Defendant ENGLE is individually liable for his unfair and deceptive acts, despite the fact he was acting on behalf of TRAVELERS, because he is a "person" as defined by TEX. INS. CODE §541.002(2).   The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, *adjuster* or life and health insurance counselor." TEX. INS. CODE §541.002(2)(emphasis added).  *(See also Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998) (holding an insurance company employee to be a "person" for the purpose of bringing a cause of action against him or her under the Texas Insurance Code and subjecting him or her to individual liability)).

56.   Falsehoods and misrepresentations may be communicated by actions as well as by the spoken word; therefore, deceptive conduct is equivalent to a verbal representation. Defendant's misrepresentations by means of deceptive conduct include, but are not limited to: (1) failing to conduct a reasonable inspection and investigation of Plaintiffs' damages; (2) stating

that Plaintiffs' damages were less severe than they in fact were; (3) using their own statements about the non-severity of the damage as a basis for denying properly covered damages and/or underpaying damages; and (4) failing to provide an adequate explanation for the inadequate compensation Plaintiffs received. Defendant ENGLE'S unfair settlement practice, as described above, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

57. Defendant ENGLE failed to make an attempt to settle Plaintiffs' claim in a fair manner, although he was aware of Defendants' liability to Plaintiffs under the Policy. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(2)(A).

58. Defendant ENGLE failed to explain to Plaintiffs the reasons for his offer of an inadequate settlement. Specifically, Defendant ENGLE failed to offer Plaintiffs adequate compensation without any explanation as to why full payment was not being made. Furthermore, Defendants did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiffs' claim. The unfair settlement practice of Defendant ENGLE as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiffs' claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

59. Defendant ENGLE'S unfair settlement practice, as described above, of failing

within a reasonable time to affirm or deny coverage of the claim to Plaintiffs, or to submit a reservation of rights to Plaintiffs, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(4).

60.     Defendant ENGLE did not properly inspect the Property and failed to account for and/or undervalued many of Plaintiffs' exterior and interior damages. Defendant ENGLE'S unfair settlement practice, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

### CAUSES OF ACTION AGAINST
### TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

61.     Plaintiffs replead all of the material allegations above set forth in Paragraphs 1-60 and incorporate the same herein by this reference as if here set forth in full.

62.     Defendant TRAVELERS is liable to Plaintiffs for intentional breach of contract, as well as intentional violations of the Texas Insurance Code, and intentional breach of the common law duty of good faith and fair dealing.

### BREACH OF CONTRACT

63.     Plaintiffs replead all of the material allegations above set forth in Paragraphs 1-62 and incorporate the same herein by this reference as if here set forth in full.

64.     Defendant TRAVELERS' conduct constitutes a breach of the insurance contract made between TRAVELERS and Plaintiffs.

65.     Defendant TRAVELERS' failure and/or refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of TRAVELERS' insurance contract with Plaintiffs.

## NONCOMPLIANCE WITH TEXAS INSURANCE CODE:
## UNFAIR SETTLEMENT PRACTICES

66.   Plaintiffs replead all of the material allegations above set forth in Paragraphs 1-66 and incorporate the same herein by this reference as if here set forth in full.

67.   Defendant TRAVELERS' conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a).  All violations under this article are made actionable by TEX. INS. CODE §541.151.

68.   Defendant TRAVELERS' unfair settlement practice, as described above, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitutes an unfair method of compensation and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

69.   Defendant TRAVELERS' unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though TRAVELERS' liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

70.   Defendant TRAVELERS' unfair settlement practice, as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

71.   Defendant TRAVELERS' unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs, or to submit a reservation of rights to Plaintiffs, constitutes an unfair method of competition and an unfair and

---

deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(4).

72.     Defendant TRAVELERS' unfair settlement practice, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(A)(7).

**NONCOMPLIANCE WITH TEXAS INSURANCE CODE:**
**THE PROMPT PAYMENT OF CLAIMS**

73.     Plaintiffs replead all of the material allegations above set forth in Paragraphs 1-72 and incorporate the same herein by this reference as if here set forth in full.

74.     Defendant TRAVELERS' conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims.  All violations made under this article are made actionable by TEX. INS. CODE §542.060.

75.     Defendant TRAVELERS' failure to acknowledge receipt of Plaintiffs' claim, commence investigation of the claim, and request from Plaintiffs all items, statements, and forms that it reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of TEX. INS. CODE §542.055.

76.     Defendant TRAVELERS' failure to notify Plaintiffs in writing of its acceptance or rejection of the claim within the applicable time constraints, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.056.

77.     Defendant TRAVELERS' delay of the payment of Plaintiffs' claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, constitutes a non-prompt payment of the claim. TEX. INS. CODE §542.058.

**RESPONSIBILITY FOR ACTS OF AGENTS AND RATIFICATION OF ACTS**

78.     Defendant ENGLE, whose conduct is referenced herein and above, is an agent of TRAVELERS based upon his acts of commission and omission in the handling of Plaintiffs' claim, including inspections, adjustments, and aiding in the adjustment of the loss for or on behalf of the insurer. TEX.INS.CODE §4001.051.

79.     Separately, and/or in the alternative, as referenced and described above, TRAVELERS ratified the actions and conduct of ENGLE including the manner in which he discharged or failed to properly discharge his duties under the common law and applicable statutory laws and regulations.

**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

80.     Plaintiffs replead all of the material allegations above set forth in Paragraphs 1-79 and incorporate the same herein by this reference as if here set forth in full.

81.     Defendant TRAVELERS' conduct constitutes a breach of the common law duty of good faith and fair dealing owed to insured in insurance contracts.

82.     Defendant TRAVELERS' failure, as described above, to adequately and reasonably investigate and evaluate Plaintiffs' claim, although, at that time, TRAVELERS knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

*CAUSES OF ACTION AGAINST ALL DEFENDANTS*

83.     Plaintiffs are not making any claims for relief under federal law.

**FRAUD**

84.     Plaintiffs replead all of the material allegations above set forth in Paragraphs 1-83 and incorporate the same herein by this reference as if here set forth in full.

85.     Defendants are liable to Plaintiffs for common law fraud.

86.     TRAVELERS represented in its Policy that covered Hail and Wind Damages would be insured against loss. Plaintiffs, to their detriment, purchased TRAVELERS' policy in exchange for a benefit TRAVELERS knew the Plaintiffs would not receive. Plaintiffs further relied to their detriment upon the false, fraudulent and deceptive acts and practices employed by Defendants, in performing an inspection, investigation and evaluation of Plaintiffs' Storm damages. Plaintiffs were not knowledgeable in the manner and scope required to investigate a storm related loss, nor knowledgeable in insurance loss coverage issues. Defendants, based upon their experience, special knowledge of storm related structural loss issues and insurance coverage issues where able to deceive Plaintiffs into believing that the property damage loss would be competently investigated by a qualified, ethical and experienced adjustor and that the loss would be properly, fairly and in good faith evaluated and assessed and the claim paid. Plaintiffs were unaware that all such representations and conduct relating to the investigation and handling of the claim were performed with the intent and purpose to defraud, take advantage of and deny and/or undervalue the property losses sustained by Plaintiffs. Plaintiffs relied to their detriment on such actions and representations resulting in the losses and damages complained of herein. Plaintiffs have been unable to repair the Storm damages and/or make temporary repairs using Plaintiffs' own limited funds, prolonging Plaintiffs' hardships of owning a storm damaged commercial property. Defendants knew at the time the above misrepresentations and fraudulent conduct occurred that the representations contained in the estimate of loss and communicated to Plaintiffs were false. Each and every one of the representations and deceptive acts and practices, as described above, and those stated in this paragraph, concerned representations and falsehoods concerning material facts for the reason that absent such representations, Plaintiffs would not

have acted as they did, and which Defendants knew were false or made recklessly without any knowledge of their truth as a positive assertion.

87.    The statements were made with the intention that they should be acted and relied upon by Plaintiffs, who in turn acted in reliance upon such statements and actions, thereby causing Plaintiffs to suffer injuries and constituting common law fraud.

## CONSPIRACY TO COMMIT FRAUD

88.    Plaintiffs replead all of the material allegations above set forth in Paragraphs 1-87 and incorporate the same herein by this reference as if here set forth in full.

89.    Defendants are liable to Plaintiffs for conspiracy to commit fraud. Defendants were members of a combination of two or more persons whose object was to accomplish an unlawful purpose or a lawful purpose by unlawful means. In reaching a meeting of the minds regarding the course of action to be taken against Plaintiffs, Defendants committed an unlawful, overt act to further the object or course of action. Plaintiffs suffered injuries as a proximate result.

## I. KNOWLEDGE

90.    Each of the acts described above, together and singularly, was done "knowingly," as that term is used in the Texas Insurance Code, and was a producing cause of Plaintiffs' damages described herein.

## J. DAMAGES

91.    Plaintiffs would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiffs.

92.    As previously mentioned, the damages caused by the May 17, 2016 hailstorm and/or windstorm have not been properly addressed or repaired in the months since the Storm,

causing further damages to the Property, and causing undue hardship and burden to Plaintiff. These damages are a direct result of Defendants' mishandling of Plaintiffs' claim in violation of the laws set forth above.

93.     For breach of contract, Plaintiffs are entitled to regain the benefit of their bargain, which is the amount of their claim, together with attorney's fees.

94.     For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiffs are entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the Policy, mental anguish, court costs, and attorney's fees.  For knowing conduct of the acts described above, Plaintiffs ask for three times their actual damages. TEX. INS. CODE §541.152.

95.     For noncompliance with the Texas Insurance Code, Prompt Payment of Claims, Plaintiffs are entitled to the amount of their claim, as well as eighteen (18) percent interest per annum on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE §542.060.

96.     For breach of the common law duty of good faith and fair dealing, Plaintiffs are entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

97.     For fraud, Plaintiffs are entitled to recover actual damages and exemplary damages for knowingly fraudulent and malicious representations, along with attorney's fees, interest, and court costs.

98.     For the prosecution and collection of this claim, Plaintiffs have been compelled to engage the services of the attorney whose name is subscribed to this pleading.   Therefore,

Plaintiffs are entitled to recover a sum for the reasonable and necessary services of Plaintiffs' attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

### K. STATEMENT OF RELIEF AND DAMAGES

99.     As required by Rule 47(b), Texas Rules of Civil Procedure, Plaintiffs' counsel states that the damages sought are in an amount within the jurisdictional limits of this Court. As required by Rule 47(c), Texas Rules of Civil Procedure, Plaintiffs' counsel states that Plaintiffs seek monetary relief, the maximum of which is over $200,000 but not more than $1,000,000. A jury, however, will ultimately determine the amount of monetary relief actually awarded. Plaintiffs also seek pre-judgment and post-judgment interest at the highest legal rate.

### L. RESERVATION OF RIGHTS

100.    Plaintiffs reserve the right to prove the amount of damages at trial. Plaintiffs reserve the right to amend their petition to add additional counts upon further discovery and as their investigation continues.

### M. JURY DEMAND

101.    Plaintiffs hereby request that all causes of action alleged herein be tried before a jury consisting of citizens residing in Bexar County, Texas. Plaintiffs hereby tender the appropriate jury fee.

### N. DISCOVERY

102.    Written Discovery in this case is governed by the following Order:

    a.  Standing Pretrial Order Concerning Bexar County Commercial Hail Claims.

### O. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that upon trial hereof,

said Plaintiffs have and recover such sum as would reasonably and justly compensate them in accordance with the rules of law and procedure, as to actual damages, treble damages under the Texas Insurance Code, and all punitive and exemplary damages as may be found.  In addition, Plaintiffs request the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which they are justly entitled to.

Respectfully submitted,

**PHIPPS, LLP**

THE PHIPPS
102 9th Street
San Antonio, Texas 78215
Telephone:      (210) 340-9877
Telecopier:     (210) 340-9887
Email: bjenkins@phippsllp.com
Email: rsoliz@phippsllp.com

By:____/s/ Brennen S. Jenkins_____
          MARTIN J. PHIPPS
          State Bar No. 00791444
          BRENNEN S. JENKINS
          State Bar No. 24092576

**ATTORNEYS FOR PLAINTIFFS**

**68880**

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT OF |
| | § | |
| **BEXAR HAIL** | § | |
| | § | **BEXAR COUNTY, TEXAS** |
| **RESIDENTIAL** | § | |
| | § | |
| **CLAIM LITIGATION** | § | **CIVIL JUDICIAL DISTRICT COURTS** |

## STANDING PRETRIAL ORDER CONCERNING
## BEXAR COUNTY RESIDENTIAL HAIL CLAIMS

This order applies to pretrial matters in residential property insurance cases filed in the District Courts of Bexar County, Texas that involve insurance disputes arising from the hail storms occurring in Bexar County in April and May of 2016. The purpose of this order is to expedite pretrial matters, discovery and mediation in order to minimize court costs and litigation expenses.

This order shall be posted on the Bexar County District Clerk website and shall be attached to the Original Petition of applicable cases. All attorneys and parties should endeavor to notify others about this order.

Parties seeking to be excused from any part of this order must set a hearing and request relief from the court.

**AUTOMATIC ABATEMENT** – The filing of an original answer by the residential insurance carrier shall trigger an immediate and automatic abatement. The case shall remain abated until 30 days after a mediation impasse.

The abatement period will apply to all court ordered deadlines and Rule 190 discovery deadlines. The abatement period will not apply to the deadlines in this order or to any statutory deadline, interest or penalties that may apply under any statutory code or law. The parties may send written discovery during the abatement time period, however, the responses and objections to those discovery requests will not be due until 30 days after the end of the abatement period.

**MEDIATION** – The parties shall agree to a mediator and to a mediation date. An Agreed Mediation Order, in the form attached, shall be filed with the court within 100 days after the answer is filed.

Within 15 days of an unsuccessful mediation, the parties will submit a proposed Agreed Scheduling Order to the court.

**DISCOVERY** – Within 60 days of the filing of an answer by the residential insurance carrier, the parties will use their best efforts to exchange information and documentation pertaining to the residence, including the following: expert reports, engineering reports, estimates of damage or repairs; contents lists for contents damage claim(s); photographs; repair receipts or invoices; the non-privileged portions of the residential insurance carrier and adjusting company's claims file (including all claim diary notes, activity logs, loss notes and email correspondence regarding the insurance claim); payment ledger, payment log and/or proof of payment from the insurance carrier; a copy of the insurance policy in effect at the time of the respective storm claim(s); and the non-privileged portions of the underwriting file. If the insurance carrier is not in possession of the adjusting company's/adjuster's claims file, and the adjusting company/adjuster is not named as a party in the lawsuit and represented by separate counsel, then the

**68880**

68880

insurance carrier shall seek the adjusting company's claims file and use their best efforts to exchange this information within the 60 day time period. The insurance carrier is also ordered to notify the independent adjusting company that all emails, activity notes and loss diary notes pertaining to the hail storm claim in litigation shall be preserved and not destroyed. Finally, a privilege log will also be produced in accordance with the Texas Rules of Civil Procedure for any redactions or privileges asserted.

Any expert reports, engineering reports, contractor estimates or any other estimates of damages or repairs obtained pursuant to this order for settlement, demand, or mediation purposes and exchanged prior to mediation shall be for mediation purposes only and shall be considered confidential, except that any estimates and/or reports that are part of the claims file, which were obtained or prepared during the claims handling, shall not be considered confidential under this paragraph. However, if a consultant, whose report is produced for mediation, is designated as a retained testifying expert and does not produce a subsequent report for use at trial, the mediation report shall not remain confidential.

Confidential reports and estimates are only confidential for the lawsuit in which they are being used. Confidential expert reports designated for mediation purposes shall be returned to the providing party within 14 days of a written request. Such reports shall not be discoverable or admissible at trial or any hearing. If the party procuring the report designates the expert to testify, such party shall have the right to prevent discovery or testimony by the expert regarding the mediation report and any opinions therein, provided that a subsequent report is produced. The procuring party may use data such as measurements and photographs without waiving this privilege. Nothing herein shall prohibit the use of those reports and estimates in any subsequent insurance claims or lawsuits involving the same residential insurance carrier.

Once a mediation date and mediator are agreed to by all parties, the residential insurance carrier shall be permitted to inspect the residence involved in the lawsuit (as soon as practicable) prior to mediation. If mediation is unsuccessful, the residential insurance carrier and other defendants may re-inspect the residence with the same, new or additional experts pursuant to the Texas Rules of Civil Procedure.

Signed on November 30, 2016

_Michael E. Mery_
Michael Mery, Judge
37th District Court

_Stephani A. Walsh_
Stephani Walsh, Judge
45th District Court

_Antonia Arteaga_
Antonia Arteaga, Judge
57th District Court

_David A. Canales_
David A. Canales, Judge
73rd District Court

68880

68880

John D. Gabriel, Jr., Judge
131st District Court

Renée Yanta, Judge
150th District Court

Laura Salinas, Judge
166th District Court

Cathleen Stryker, Judge
224th District Court

Peter Sakai, Judge
225th District Court

Richard Price, Judge
285th District Court

Sol Casseb III, Judge
288th District Court

Karen H. Pozza, Judge
407th District Court

Larry Noll, Judge
408th District Court

Gloria Saldaña, Judge
438th District Court

68880

# 68880

## AGREED MEDIATION ORDER

Pursuant to the Standing Pretrial Order Concerning Bexar County Residential Hail Claims, the parties agree to the following mediation date and mediator:

Date: _____

Mediator: _____

The court, hereby, approves and orders the above date and mediator as agreed by the parties.

Each side shall pay an equal portion of the mediation fee.

All parties must have in attendance a representative with full authority to enter into a final settlement agreement. The following shall be personally in attendance at the mediation until excused by the mediator:

1.    An attorney of record for each party, unless the party is self-represented.

2.    All individual parties, either plaintiff or defendant, except that individual defendant adjusters and insurer employee defendants are not ordered to attend so long as a representative with full authority to negotiate and settle on their behalf is present.

3.    A representative of each non-individual party, unless the parties agree otherwise in writing.

Signed and entered on _____, 2016.


_____

Judge Presiding


# 68880

4




US POSTAGE PITNEY BOWES

ZIP 78205 $ 008.13
02 4P
0000350844 AUG 25 2017

7016 2070 0000 7520 4603



**DONNA KAY MᶜKINNEY**
Bexar County District Clerk
101 W. Nueva St., Suite 217
San Antonio, Texas 78205

*RETURN SERVICE REQUESTED*

TRAVELERS PROPERTY CASUALTY COMPANY
OF AMERICA
C/O CORPORATION SERVICE COMPANY
211 E. 7TH ST. 620
AUSTIN, TX 78701
2017IC15339  9/24/2017  CITCM CHRISTOPHER MORROW